UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
JOSE JAVIER FERNANDEZ,                 :
                                       :
                      Plaintiff,       :      19cv1862 (DLC)
                                       :
           -v-                         :      OPINION AND ORDER
                                       :
THE CITY OF NEW YORK, NEW YORK CITY    :
POLICE DEPARTMENT, JAMES P. O'NEILL,   :
Commissioner of the New York City      :
Police Department, JOSE CEPEDA, AMADEO :
OKTROVA, and CHRISTINA MONCION,        :
                                       :
                      Defendants.      :
                                       :
-------------------------------------- X

APPEARANCES

For the plaintiff:
Elliot H. Fuld
Law Office of Elliot H. Fuld
930 Grand Concourse, Suite 1G
Bronx, NY 10451

For the defendants:
Geoffrey M. Stannard
New York City Law Department
100 Church Street, 4th Floor
New York, NY 10007

DENISE COTE, District Judge:

     Plaintiff Jose Javier Fernandez asserts civil rights claims

against three New York City police officers -- Amadeo Oktrova,

Christina Moncion, and Jose Cepeda.  In particular, Fernandez

alleges that he was unlawfully stopped and falsely arrested in

violation of 42 U.S.C. § 1983 and New York law.  He also asserts

a state law malicious prosecution claim.  Fernandez additionally

names the City of New York as a defendant under <u>Monell v.</u>

<u>Department of Social Services of City of New York</u>, 436 U.S. 658

(1978), and under a theory of negligent hiring and supervision.

The defendants have moved for summary judgment.  That motion is

granted except as to the false arrest and malicious prosecution

claims against Oktrova.

## **Background**

The following facts are undisputed or taken in the light

most favorable to Fernandez, unless otherwise noted.[1]

## The Traffic Stop and Arrest

On the evening of July 14, 2018, Fernandez was driving his

minivan in the Bronx, New York.  Ariel Ovalles was seated in the

front passenger seat, and Elvio Toribio was seated in the second

row of seats.[2]  Fernandez turned onto 196th Street, drove

eastbound half a block, and then encountered a car stopped in

his lane.  The street has two lanes, with one lane of traffic

---

[1] Plaintiff's counsel submitted his own Local Rule 56.1 statement
but failed to specifically oppose the facts advanced by the
defendants.  Although the defendants' version of the facts could
simply be deemed admitted due to plaintiff's counsel's failure,
the Court has chosen to consider any evidence submitted by the
parties and rely on those materials to determine where factual
disputes remain.

[2] Ovalles and Toribio were initially co-plaintiffs with
Fernandez.  But Ovalles and Toribio repeatedly failed to appear
for their depositions, and their claims were dismissed by an
Order of March 18, 2020.

flowing in each direction and curbside parking on both sides of the street.  Fernandez remained behind that stopped car for approximately two minutes.

Meanwhile, Oktrova and Moncion were traveling slowly in the opposite direction along 196th Street in an unmarked police vehicle.  Oktrova was driving and observed Fernandez's minivan while it was stopped.  Oktrova waved at Fernandez as he passed. About 20 seconds after Oktrova waved at him, Fernandez pulled his van out and around the stopped car and continued along 196th Street.  Oktrova and Moncion did a U-turn and initiated a traffic stop of Fernandez's minivan.  According to Oktrova, the reason he stopped the minivan was because he had seen it double parked.

Oktrova approached the driver's side window of the minivan and spoke with Fernandez.  According to Oktrova, he observed what appeared to be a gravity knife[3] in a cup holder located in

---

[3] At the time of these events, New York law prohibited the carrying of gravity knives, defined as knives "that can be opened to a locked position with a one-handed flick of the wrist." Copeland v. Vance, 893 F.3d 101, 107 (2d Cir. 2018). The prohibition on gravity knives was subsequently found unconstitutionally vague and then repealed by the state legislature. Cracco v. Vance, 376 F. Supp. 3d 304, 318 (S.D.N.Y. 2019) (holding statute unconstitutionally vague); Governor Cuomo Signs Legislation Ending The Legal Ban On Gravity Knives (May 30, 2019), https://www.governor.ny.gov/news/ governor-cuomo-signs-legislation-ending-legal-ban-gravity-knives.

the minivan's center console.[4]  According to Fernandez, there was no knife in the console.[5]  Ovalles and Toribio likewise testified that they did not possess a knife or know of any knife in the van.  Oktrova ordered all three occupants to get out of the minivan.  According to Fernandez, Ovalles, and Toribio, Oktrova then said something to the effect of, "Three Dominican guys in a van -- you guys look suspicious."  Oktrova denies making any such statement.  Oktrova says that after the minivan's occupants exited the vehicle, he retrieved the knife from the van and determined that it was a gravity knife.

Shortly thereafter, Oktrova called for backup, and other officers arrived on the scene, including Cepeda.  Oktrova

---

[4] The parties seemingly use the term "center console" to refer to a closed compartment.  The Court understands the term to refer more generally to a storage area between a vehicle's front seats, which can contain both a compartment and cup holder.  See United States v. Hussain, 835 F.3d 307, 315 (2d Cir. 2016) (referring to the "console area"); United States v. Cuevas, No. 15cr846 (PKC), 2016 WL 2766657, at *1 (S.D.N.Y. May 12, 2016) (referring to a "cup holder located in the center console"); AutoZone, Console (last visited July 22, 2020) https://www.autozone.com/interior-organization-and-cargo-management/console (listing products containing both compartments and cup holders).

[5] In the portions of Fernandez's deposition that have been presented concerning this motion, he was not directly asked whether there was a knife in the cup holder.  Plaintiff did not file an affidavit in opposition to the motion, which could have clarified this point.  But taking the available evidence in the light most favorable to Fernandez, during his deposition he denied the presence of a knife in any part of the van that he could observe.

4

informed Cepeda that he had observed Fernandez's minivan double parked and had discovered a gravity knife in the van.  Fernandez was arrested, and Cepeda was designated as the arresting officer on the arrest report.

Post-Arrest Events

At the precinct, Cepeda conducted an inventory search of the minivan and reached the conclusion that the van's safety and emissions inspection sticker was a forgery.  Cepeda signed a criminal court complaint charging Fernandez with criminal possession of a weapon in the fourth degree, based on the report Oktrova provided concerning the gravity knife.  Fernandez was arraigned and released on his own recognizance at approximately 5:00 p.m. on July 15, 2018.  On October 18, the charges against Fernandez were dismissed on speedy trial grounds.

Procedural History

This action was filed on February 27, 2019.  An amended complaint was filed on November 26.  On March 20, 2020, following the conclusion of discovery, the defendants moved for summary judgment.  Defendants supported their motion with a variety of exhibits, including portions of deposition testimony from Fernandez and Oktrova.  On May 26, plaintiff opposed the motion.  Plaintiff's opposition was likewise supported by a variety of exhibits, including deposition testimony from

Fernandez and Oktrova.  Plaintiff did not file an affidavit from
Fernandez addressing the points raised by defendants' motion.
Nor did plaintiff respond to defendants' Local Rule 56.1
statement as required.  Defendants' reply papers were filed on
July 3.  On July 8, plaintiff filed a letter attaching certain
exhibits erroneously omitted from the May 26 opposition filings.

### **Discussion**

A motion for summary judgment may not be granted unless all
of the submissions taken together "show[] that there is no
genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(a).  "A genuine issue of material fact exists if the evidence
is such that a reasonable jury could return a verdict for the
nonmoving party."  Nick's Garage, Inc. v. Progressive Cas. Ins.
Co., 875 F.3d 107, 113 (2d Cir. 2017) (citation omitted).
"Where, as here, the party opposing summary judgment bears the
burden of proof at trial, summary judgment should be granted if
the moving party can point to an absence of evidence to support
an essential element of the nonmoving party's claim."  Gemmink
v. Jay Peak Inc., 807 F.3d 46, 48 (2d Cir. 2015) (citation
omitted).  In making this determination, the court "draws all
inferences in favor of the nonmoving party."  Id.  Only disputes
over material facts will properly preclude the entry of summary

6

judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).  "An issue of fact is genuine and material if the
evidence is such that a reasonable jury could return a verdict
for the nonmoving party."  Cross Commerce Media, Inc. v.
Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).

Once the moving party has cited evidence showing that the
non-movant's claims or affirmative defenses cannot be sustained,
the party opposing summary judgment must "come forward with
evidence that would be sufficient to support a jury verdict in
its favor."  CIT Bank N.A. v. Schiffman, 948 F.3d 529, 532 (2d
Cir. 2020) (citation omitted).  "The nonmoving party may not
rely simply on conclusory statements or on contentions that the
affidavits supporting the motion are not credible."  Id.  Nor
may the nonmoving party rely on "mere speculation or conjecture
as to the true nature of the facts."  Fed. Trade Comm'n v.
Moses, 913 F.3d 297, 305 (2d Cir. 2019) (citation omitted).

In order to prevail on a § 1983 claim, a plaintiff must
show "the violation of a right secured by the Constitution and
laws of the United States" and that "the alleged deprivation was
committed by a person acting under color of state law."  Jones
v. Cty. of Suffolk, 936 F.3d 108, 114 (2d Cir. 2019) (citation
omitted).  Individual defendants can only be liable under § 1983

if they were "personally involved" in the constitutional violation.  Brandon v. Kinter, 938 F.3d 21, 36 (2d Cir. 2019).

I.   Unlawful Stop

To satisfy the Fourth Amendment, "an officer making a traffic stop [must] have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity."  United States v. Wallace, 937 F.3d 130, 137 (2d Cir. 2019) (citation omitted).  "Reasonable suspicion" exists when the officer is "in possession of specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion."  United States v. Ojudun, 915 F.3d 875, 882 (2d Cir. 2019) (citation omitted).  "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause."  Kansas v. Glover, 140 S. Ct. 1183, 1187 (2020) (citation omitted).

Here, Oktrova and Moncion had reasonable suspicion that Fernandez was violating New York Vehicle and Traffic Law § 1202(a)(1)(a), which prohibits double parking.  More precisely, the statute provides,

> Except when necessary to avoid conflict with other
> traffic, or when in compliance with law or the

> directions of a police officer or official traffic-
> control device, no person shall . . . [s]top, stand or
> park a vehicle . . . [o]n the roadway side of any
> vehicle stopped, standing or parked at the edge or
> curb of a street . . . .

N.Y. Veh. & Traf. Law § 1202(a)(1)(a).  Fernandez contends that,
crediting his version of events, stopping the minivan in the
eastbound lane was "necessary to avoid conflict with other
traffic" and thus not a violation of the law.  Fernandez
acknowledges that he was stopped for approximately two minutes
and did not move the minivan until after Oktrova waved at him.
He contends, however, that he moved the minivan at his first
opportunity since oncoming traffic had prevented him from moving
at any earlier point in those two minutes.

As the officers drove by, they would not have known how
long Fernandez had been stopped behind the other vehicle or
whether he had had an opportunity to continue along 196th
Street.  The officers' observations, however, provided them with
a reasonable suspicion Fernandez had double parked -- which is
sufficient to justify their investigatory traffic stop.
Accordingly, summary judgment is granted to the defendants on
plaintiff's claim that the traffic stop was unlawful.

II.  False Arrest

"A section 1983 claim for false arrest is substantially the
same as a claim for false arrest under New York law."  <u>Jenkins</u>

v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007) (citation omitted).  A false arrest claim under New York law requires a plaintiff to prove "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  Liranzo v. United States, 690 F.3d 78, 95 (2d Cir. 2012) (citation omitted).

"To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either (1) he had probable cause for the arrest, or (2) he is protected from liability because he has qualified immunity."  Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015) (citation omitted).  An officer "has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015) (citation omitted).  "Probable cause is determined on the basis of facts known to the arresting officer at the time of the arrest."  Shamir v. City of New York, 804 F.3d 553, 557 (2d Cir. 2015) (citation omitted); see also District of Columbia v. Wesby, 138 S. Ct. 577, 586 (2018) ("To determine whether an officer had probable cause for an arrest,

10

we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." (citation omitted)).

"[U]nder the collective or imputed knowledge doctrine, an arrest is permissible where the actual arresting officer lacks the specific information to form the basis for probable cause but sufficient information to justify the arrest was known by other law enforcement officials initiating the investigation." Brown v. City of New York, 798 F.3d 94, 99 (2d Cir. 2015) (citation omitted).  "When making a probable cause determination, police officers are entitled to rely on the allegations of fellow police officers."  Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (citation omitted).  "The determination of probable cause does not turn on whether the fellow agent's observations were accurate, but on whether the arresting agent was reasonable in relying on those observations."  Id.

Defendants argue that there was probable cause to arrest Fernandez for (1) double parking, (2) possessing a gravity knife, and (3) possessing a forged vehicle inspection sticker. None of these assertions allows a grant of summary judgment as to Oktrova.

11

Although there was reasonable suspicion to conduct an investigatory stop concerning whether Fernandez had been double parked, the defendants have provided no evidence that they in fact investigated that suspected offense during the stop.  More investigation would have been necessary to develop probable cause.  Cf. Mitchell v. City of New York, 841 F.3d 72, 78 (2d Cir. 2016) ("The failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." (citation omitted)).  Fernandez did not make such further inquiry because, as he explains, he discovered and seized the gravity knife.

Concerning the gravity knife, there is a genuine factual dispute about whether such a knife was found in plain view in the minivan.  The defendants argue that there is no triable issue of fact concerning the knife because Fernandez could not testify that he had examined the closed compartment in the center console or whether Ovalles and Toribio possessed a knife. But Oktrova testified that the knife was in plain view in a cup holder; accordingly, Fernandez's testimony to the effect that he saw no such knife is sufficient to raise a factual dispute about whether there was probable cause to arrest for possession of a gravity knife.  The allegedly forged inspection sticker cannot

provide probable cause for the arrest, because Cepeda examined the sticker during a post-arrest inventory search.

Plaintiff has not provided evidence that Moncion was personally involved in his arrest.  Nor has he provided any evidence that it was unreasonable for Cepeda to rely on Oktrova's report that he had discovered a gravity knife. Accordingly, plaintiff's false arrest claim may proceed only against Oktrova.

III. Malicious Prosecution

Fernandez has brought a malicious prosecution claim under New York state law, which requires him to prove, "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Stampf v. Long Island R. Co., 761 F.3d 192, 198 (2d Cir. 2014).

First, Moncion and Oktrova contend that they did not initiate a criminal proceeding against Fernandez.  It is true that only Cepeda signed the criminal court complaint.  The filing of an "accusatory instrument," including a criminal complaint, initiates a prosecution under New York law.  Cameron v. City of New York, 598 F.3d 50, 63 (2d Cir. 2010).  But Cepeda prepared the complaint based on information learned from

Oktrova.  And "supplying false information . . . in substantial furtherance of a criminal action against the plaintiff . . . may, depending on the circumstances, constitute the commencement" of a prosecution.  Torres v. Jones, 47 N.E.3d 747, 761 (N.Y. 2016).  A law enforcement officer need not have signed the complaint to "initiate" a prosecution, where the officer provides information in furtherance of the prosecution.  Cameron, 598 F.3d at 57, 63.[6]  Accordingly, both Cepeda and Oktrova could be found to have initiated the prosecution here.

Under New York law, "any termination of a criminal prosecution, such that the criminal charges may not be brought again, qualifies as a favorable termination, so long as the circumstances surrounding the termination are not inconsistent with the innocence of the accused."  Lanning v. City of Glens Falls, 908 F.3d 19, 27 (2d Cir. 2018) (citation omitted).  A dismissal on speedy trial grounds therefore generally constitutes favorable termination under New York law.  Smith-Hunter v. Harvey, 734 N.E.2d 750, 753 (N.Y. 2000).

For purposes of a New York malicious prosecution claim, probable cause "is the knowledge of facts, actual or apparent,

---

[6] Even a civilian can be found to have initiated a criminal proceeding where "[the] defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act."  Stampf, 761 F.3d at 199.

strong enough to justify a reasonable man in the belief that he
has lawful grounds for prosecuting the defendant in the manner
complained of." Cardoza v. City of New York, 29 N.Y.S.3d 330,
340 (N.Y. App. Div. 2016).  And "malice does not have to be
actual spite or hatred, but requires only that the defendant
must have commenced the criminal proceeding due to a wrong or
improper motive, something other than a desire to see the ends
of justice served." Dufort v. City of New York, 874 F.3d 338,
353 (2d Cir. 2017) (citation omitted).

> While lack of probable cause to institute a criminal
> proceeding and proof of actual malice are independent
> and indispensable elements of a malicious prosecution
> action, the absence of probable cause does bear on the
> malice issue, and probable cause to initiate a
> criminal proceeding may be so totally lacking as to
> reasonably permit an inference that the proceeding was
> maliciously instituted.

Torres, 47 N.E.3d at 762 (citation omitted).

As discussed above, Cepeda was entitled to rely on
Oktrova's account, so plaintiff has failed to raise a genuine
issue of fact concerning whether Cepeda lacked probable cause or
acted with malice.  As to Oktrova, however, the conflicting
testimony concerning the gravity knife is sufficient to raise a
genuine dispute concerning these final two elements.  Oktrova's
alleged suggestion that the three men in the van were suspicious
due to their national origin only bolsters that conclusion.

15

Accordingly, Moncion and Cepeda are entitled to summary judgment on the malicious prosecution claim, but Oktrova is not.

IV.  Qualified Immunity

Defendants contend that they are entitled to qualified immunity on all of plaintiff's claims.  Having already resolved a number of claims in favor of the individual defendants, only the remaining § 1983 claim against Oktrova is considered here.

"[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time."  Wesby, 138 S. Ct. at 589 (citation omitted).  "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent."  Id.  "The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 590 (citation omitted).  Applying these principles, the same factual disputes that preclude summary judgment preclude a finding of qualified immunity.  All of the legal principles involved in this determination are clearly established and would have been well known to a reasonable officer.

16

V.    Monell Liability

     "[A] municipality can be held liable under Section 1983 if
the deprivation of the plaintiff's rights under federal law is
caused by a governmental custom, policy, or usage of the
municipality."  Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d
Cir. 2012) (citation omitted).  "[I]solated acts . . . by non-
policymaking municipal employees are generally not sufficient to
demonstrate a municipal custom, policy, or usage that would
justify municipal liability."  Id. at 81 (citation omitted).  "A
municipal policymaking official's 'deliberate indifference' to
the unconstitutional actions, or risk of unconstitutional
actions, of municipal employees can in certain circumstances
satisfy the test for a municipal custom, policy, or usage that
is actionable under Section 1983."  Id. (citation omitted).

     Here, plaintiff has provided evidence only of isolated
instances in which the particular officers involved in his
arrest are alleged to have engaged in misconduct.  That is
insufficient to raise a triable issue of fact concerning Monell
liability.

VI.  Remaining Issues

     Plaintiff's amended complaint also seems to assert state
law claims for assault and battery and for negligent hiring,
retention, training, or supervision.  As the defendants point

out, plaintiff has failed to provide evidence to support
essential elements of these claims.  Indeed, plaintiff
apparently abandons these claims by failing to address them in
the brief opposing defendants' motion.  Defendants are therefore
entitled to summary judgment on these claims.

Plaintiff also names the NYPD and its Commissioner as
defendants.  The NYPD is a non-suable entity.  <u>Jenkins</u>, 478 F.3d
at 93 n.19.  And plaintiff has provided no evidence that the
Commissioner was personally involved in any constitutional
deprivation.  These two defendants are therefore entitled to
summary judgment on all claims against them.

**Conclusion**

The only claims that remain for trial are the false arrest
and malicious prosecution claims against Oktrova.  Otherwise,
defendants' March 31, 2020 motion for summary judgment is
granted.


Dated:    New York, New York
          July 24, 2020


_____
DENISE COTE
United States District Judge


18